UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**MALIK MUHAMMAD, 96-A-3015,**

               **Plaintiff,**         07-CV-0232(Sr)

v.

**SCOTT HODGE and
ANGELA BARTLETT,**

               **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #11.

Currently before the Court are the following motions:

(1) Plaintiff's motion for relief pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Dkt. #31);

(2) Defendants' Motion for Summary Judgment (Dkt. #40); and

(3) Plaintiff's motion for a temporary restraining order directing that plaintiff "become legally barred from Southport Correctional Facility" (Dkt. #56).

Plaintiff commenced this *pro se* action on or about April 9, 2007 pursuant to 42 U.S.C. § 1983. Dkt. #1. Plaintiff alleges that while he was housed at the Southport Correctional Facility ("Southport"), during the period of November 2006 through December 2006, defendants failed to permit plaintiff to incur an encumbrance on his

inmate account to make copies in connection with an Order to Show Cause pertaining to an ongoing Article 78 proceeding plaintiff was pursuing in New York State Supreme Court, Albany County. *Id*. For the following reasons, plaintiff's motion for relief pursuant to Rule 56(f) (Dkt. #31) is denied, defendants' motion for summary judgment (Dkt. #40) is granted and plaintiff's motion for a temporary restraining order (Dkt. #56) is denied.

## **BACKGROUND**

Plaintiff, proceeding *pro se*, filed this action on or about April 9, 2007 against defendants Scott Hodge and Angela Bartlett. Dkt. #1. In his complaint, plaintiff alleges that during the period of November 2006 through December 2006, by reason of defendants' denial of plaintiff's request to incur an encumbrance on his inmate account, defendants denied plaintiff access to the courts. At all times relevant to the allegations set forth in plaintiff's complaint, defendant Scott Hodge was employed by the New York State Department of Correctional Services ("DOCS") as a Correctional Officer at Southport and among his duties, defendant Hodge served as the Law Library Supervisor. Dkt. #41, ¶¶ 1 and 6. As the Law Library Supervisor, defendant Hodge received and reviewed inmate requests for photocopying services. *Id*. at ¶ 7. Photocopying is conducted at the law library and costs 8 cents per page. *Id*. In addition, at all times relevant to the allegations set forth in plaintiff's complaint, defendant Angela Bartlett was employed by DOCS as the Deputy Superintendent for Program Services at Southport. Dkt. #42, ¶ 1. As part of her duties as the Deputy

Superintendent for Program Services, defendant Bartlett served as Southport's Law Library Administrator. *Id*. at ¶ 6. On occasion, the Law Library Supervisor may consult with the Law Library Administrator during his or her review of inmate requests for an encumbrance for photocopying. *Id*. at ¶ 7.

DOCS Directive 4483 titled "Law Libraries & Inmate Legal Assistance and Notary Public Services" provides for, *inter alia*, the parameters for photocopying services. Dkt. #42, pp.7-11. DOCS Directive 4483I provides:

> <u>Photocopying</u>. The facility shall provide reasonable photocopying service to inmates requesting copies of their legal papers and/or Law Library materials, subject to copyright regulations. The Law Library Supervisor or other staff assigned to facilitate the legal photocopying service shall review all materials submitted to ensure that they are legal in nature. All photocopying requests must be accompanied by a disbursement form (IAS 2706). All disbursement forms for legal photocopying must be forwarded to the Business Office no later than the end of the shift when received. Absent extenuating circumstances, the inmate must receive his or her photocopies within five business days of receipt of the disbursement from (IAS 2706) in the Business Office. Two-day commissary holds, where applicable, might increase the delivery deadline to seven days. Fees shall be assessed equal to the facility's cost of reproduction excluding costs for staff time.
>
> An inmate lacking sufficient funds may not receive photocopying services unless the Law Library Supervisor, in consultation with the Law Library Administrator or Counsel's Office, approves an encumbrance for same. Encumbrances will only be authorized for photocopies of specific documents that are required by the courts that cannot be replicated longhand.

Dkt. #41, p.8. As explained by both defendant Hodge and defendant Bartlett, "[t]he determination on [sic] which documents can be replicated longhand are judgment calls

made on a case by case basis by the Law Library Supervisor and/or the Law Library Administrator." Dkt. #41, ¶ 9; Dkt. #42, ¶ 9. Moreover, defendant Bartlett further explained that, "[t]he purpose of the DOCS requirements for photocopying encumbrances are to prevent inmate abuses of prison services and to prevent the resulting financial hardship to the taxpayers of the State of New York that would result from excessive copies being made." Dkt. #42, ¶ 10.

Plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Albany County, Index No. 7041-06 challenging the result of a disciplinary hearing. Dkt. #44, ¶¶ 3-4. In the Article 78 proceeding, plaintiff attempted to challenge an April 13, 2006 disposition wherein he was found guilty of violating rule 113.10, possession of a weapon, while he was being housed at the Wende Correctional Facility. Dkt. #43, pp.6-16. In his complaint, plaintiff alleged that pursuant to an Order to Show Cause issued by New York State Supreme Court, Albany County, Honorable Joseph C. Teresi, plaintiff was required to serve the Order to Show Cause, the Petition, exhibits and any supporting affidavits upon the respondents, no later than December 15, 2006. Dkt. #1, p.2.

On or about November 9, 2006, plaintiff submitted an Authorized Advance Request form to defendant Hodge to have his inmate account encumbered for the cost of making photocopies of the Order to Show Cause documents described above. Dkt. #41, ¶ 10; Dkt. #41, pp.10-31. On or about November 10, 2006, defendant Hodge, after consultation with defendant Bartlett, responded to plaintiff's request and informed

him that his request did not meet the criteria for an encumbrance per DOCS Directive 4483. Dkt. #41, ¶ 10. Specifically, defendant Hodge explained in his affidavit that plaintiff's request was denied because the documents could be copied longhand. Dkt. #41, ¶ 11; Dkt. #41, pp.32-33.

On or about November 14, 2006, plaintiff submitted a request to defendant Bartlett for an encumbrance for the documents (Order to Show Cause, Petition, exhibits and any supporting affidavits) he needed to be reproduced pursuant to the Order to Show Cause signed by Justice Teresi. Dkt. #42, ¶ 11; Dkt. #42, pp.12-13. Defendant Bartlett responded to plaintiff's request on the same day by written memorandum wherein she stated,

> Directive #4483, Law Libraries ..., page 3, section I, regarding photocopying clearly states that an inmate lacking sufficient funds may receive photocopy services of documents that <u>cannot</u> be replicated longhand.
>
> The Law Library will issue adequate supplies (upon you [sic] request) to copy your documents longhand.
>
> Another option is to send them out to a family member to have copies [sic]. If you do this you must request them to come back in as general correspondence per Directive #4422, inmate Correspondence Program, guidelines.

Dkt. #42, p.15 (emphasis in original).

On November 20, 2006, plaintiff again submitted an Authorized Advance Request form to have his account encumbered for the cost of making photocopies, together with a letter stating that none of the documents could be reproduced longhand. Dkt. #41, ¶ 12; Dkt. #42, pp.34-37. On or about November 27, 2006, defendant Hodge

responded to plaintiff's request stating again that plaintiff's request was denied pursuant to DOCS Directive 4483 because the documents could be copied longhand. Dkt. #41, ¶ 13; Dkt. #41, pp.38-39.

On or about December 8, 2006, plaintiff wrote to defendant Bartlett requesting that copies be made for documents that plaintiff claimed could not be reproduced longhand. Dkt. #42, ¶ 13; Dkt. #42, pp.18-19. On the same day, Defendant Bartlett responded to plaintiff's request by memorandum and instructed plaintiff to submit the documents he would like to have copied for a determination of whether she would approve an encumbrance for the documents to be copied. Dkt. #42, ¶ 14; Dkt. #42, pp.18-19. Plaintiff complied with defendant Bartlett's request and submitted the documents for her review on or about December 8, 2006. Dkt. #42, ¶ 15; Dkt. #42, pp.20-34. By memorandum dated December 14, 2006, defendant Bartlett advised plaintiff as follows: "You will be advanced funds for the signed Order to Show Cause and <u>necessary</u> exhibits. You must hand copy any petitions and supporting affidavits. All your documents are being returned to you. You should complete an Advance of Funds form, being specific as to your needed copies and forward it back to me." Dkt. #42, p.36 (emphasis in original).

On December 21, 2006, defendant Bartlett received a letter from plaintiff including the exhibits he believed were necessary. Dkt. #42, ¶ 18; Dkt. #42, pp.37-38. Again, on the same day defendant Bartlett responded to plaintiff by memorandum and advised him that because the other documents could be reproduced longhand, he

would only be approved for an advance to copy the Order to Show Cause. Dkt. #42, ¶ 19; Dkt. #42, pp.39-40. On December 24, 2006, plaintiff again wrote to defendant Bartlett acknowledging that only the Order to Show Cause would be copied and plaintiff requested 12 copies of the Order to Show Cause. Dkt. #42, ¶ 20; Dkt. #42, pp.41-42. By memorandum dated December 27, 2006, defendant Bartlett informed plaintiff that because only the six respondents and the Attorney General's Office needed copies of the Order to Show Cause, defendant Bartlett would only authorize 7 copies to be made unless plaintiff could explain why additional copies were necessary. Dkt. #42, ¶ 21; Dkt. #42, pp.42-43. In an undated letter to defendant Bartlett, plaintiff agreed with her determination and acknowledged that he needed only 7 copies. Dkt. #42, ¶ 22; Dkt. #42, pp.45-46. Thereafter, the 7 copies of the Order to Show Cause were made. *Id*.

On the basis that plaintiff (petitioner) failed to comply with the service requirements set forth in the Order to Show Cause signed by Justice Teresi, the respondents in the Article 78 proceeding filed a motion to dismiss. Dkt. #44, ¶ 5. By Decision and Order dated March 30, 2007, the New York State Supreme Court granted respondents' motion to dismiss on the grounds that plaintiff (petitioner) did not oppose the motion to dismiss. Dkt. #44, ¶ 6; Dkt. #43, pp.37-39. Thereafter, plaintiff commenced this action against defendants Hodge and Bartlett alleging that they denied him access to the courts in violation of the First Amendment by reason of their denial of his photocopy requests pertaining to the Article 78 proceeding he brought in New York State Supreme Court, Albany County.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be

defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Denial of Access to the Courts Claim**

Prison regulations must not "unjustifiably obstruct" prisoners' well established right of access to the courts. *See e.g., Procunier v. Martinez*, 416 U.S. 396 (1974). "This principle, however, requires only that prisoners' access to the courts be 'adequate, effective, and meaningful,' and does not preclude the balancing of prisoners' rights with the legitimate interests of the states, including economic concerns." *Dugar v. Coughlin*, 613 F.Supp 849 (S.D.N.Y. 1985), *citing, Bounds v. Smith*, 430 U.S. 817 (1977). A state need not "provide the *best* manner of access, nor is it obligated to equalize the financial resources of each of its inmates .... So long as the State's procedure's [sic] meet constitutional minima, the courts should not second-guess them." *Pino v. Dalsheim*, 558 F. Supp. 673, 675 (S.D.N.Y. 1983) (emphasis in original).

Courts in the Second Circuit have repeatedly held that a prisoner does not have a constitutional right to free copies and prison regulations that limit access to such

copies are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Gittens v. Sullivan*, 670 F.Supp 119, 122-23 (S.D.N.Y. 1987), *aff'd*, 848 F.2d 389 (2d Cir. 1988); *Dugar v. Coughlin*, 613 F.Supp. 849, 853-54 (S.D.N.Y. 1985); *Gill v. Pact Org.*, No. 95 Civ. 4510(LAP), 1997 WL 539948, at *4 (S.D.N.Y. Aug. 28, 1997); *Ragland v. Keane*, No. 95 Civ. 4893(SHS), 1996 WL 655810, at *1 (S.D.N.Y. Nov. 12, 1996); *Collins v. Goord*, 438 F.Supp.2d 399, 416 (S.D.N.Y. 2006). Thus, courts in the Second Circuit have found that Directive No. 4483, which states that an inmate without funds "may not receive photocopying services unless the Law Library Supervisor, in consultation with the Law Library Administrator or Counsel's Office, approves an encumbrance for the same" and that such encumbrances will be authorized only "for photocopies of specific documents that are required by the courts that cannot be replicated longhand" is constitutional. N.Y. DOCS Direction No. 4483 (Mar. 28, 2002).

Although prisoners retain the constitutional right to meaningful access to the courts, in order to state a valid claim concerning access to the courts, a prisoner must allege that the prison officials' deliberate and malicious interference resulted in actual injury. *Lewis v. Casey*, 518 U.S. 343, 349, 353 (1996). Moreover, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id*. at 354. Indeed, the United States Supreme Court in *Lewis v. Casey* stated,

> Finally, we must observe that the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals from the

> convictions for which they were incarcerated ... or habeas
> petitions, we extended this universe of relevant claims only
> slightly, to 'civil rights actions' - i.e., actions under 42 U.S.C.
> § 1983 to vindicate 'basic constitutional rights.'

*Id*. (internal citations omitted).

In support of their motion for summary judgment, defendants argue that plaintiff has not suffered the requisite actual injury to succeed on his denial of access to the courts claim. Indeed, defendants assert that "[t]he right to be free from frustration of legal claims in the prison setting 'has never been extended to Article 78 proceedings.'" Dkt. #45, p.5, *citing*, *Brown v. Jacobson*, No. 98 Civ. 0565 LBS, 1999 WL 1125122, at *3 (S.D.N.Y. Dec. 8, 1999). Furthermore, defendants insist that "[f]rustration of an Article 78 claim does not fall within the frustration of legal claim necessary to show actual injury." Dkt. #45, p.6. While defendants are correct insofar as United States District Judge Leonard B. Sand did suggest in his 1999 decision in *Brown v. Jacobson* that the right of access may not extend to actions brought by inmates under Article 78, other courts within the Second Circuit "have implicitly assumed [,] without deciding [,] that an Article 78 challenge can ground an access to courts claim." *Collins v. Goord*, 438 F.Supp.2d 399, 417 (S.D.N.Y. 2006), *citing*, *McCoy v. Goord*, 255 F.Supp.2d 233, 260-61 (S.D.N.Y. 2003) (entertaining Article 78 access to courts claim but dismissing for failure to demonstrate actual injury); *Stubbs v. de Simone*, No. 04 Civ. 5755 (RGH)(GWG), 2005 WL 1079286, at *12-13 (S.D.N.Y. May 9, 2005) (same); *Sims v. Goord*, No. 01 Civ. 6187 (CJS), 2005 WL 189721, at *4 (W.D.N.Y. Jan. 25, 2005, *vacated on other grounds*, 151 Fed.Appx. 12 (2d Cir. 2005) (entertaining Article 78

access to the courts claim but dismissing on other grounds). Thus, the Court notes that it appears that the law in the Second Circuit remains unclear as to whether the frustration of an Article 78 proceeding satisfies the actual injury requirement for a denial of access to the courts claim. Because this Court concludes as a matter of law that plaintiff cannot demonstrate that defendants acted deliberately and maliciously and therefore defendants are entitled to summary judgment on that basis, this Court need not decide whether the frustration of an Article 78 proceeding satisfies the actual injury requirement.

As set forth above, in order to succeed on a denial of access to the courts claim, plaintiff must demonstrate that the defendants' deliberate and malicious conduct resulted in actual injury. Here, there is nothing in the record before this Court to support a finding that the defendants acted deliberately and maliciously. Rather, plaintiff's own complaint and the record before this Court unequivocally establishes that defendants were responsive to plaintiff's requests, offered suggestions to plaintiff as to how he could get the copies he needed made and ultimately, approved plaintiff's request to have the Order to Show Cause copied for each of the respondents and the Attorney General's office. As a threshold matter, the Court notes that notwithstanding plaintiff's repeated efforts to secure an encumbrance for photocopies of the Order to Show Cause signed by Justice Teresi and the supporting papers, plaintiff never sought an extension of time to serve the Order to Show Cause and supporting papers on respondents. Moreover, plaintiff (petitioner) failed to respond to respondents' motion to dismiss the Article 78 proceeding, thereby resulting in its dismissal. Such failures by

plaintiff are fatal to his claim. Specifically, the Order to Show Cause required the plaintiff (petitioner) to serve the Order to Show Cause, the Petition, exhibits and any supporting affidavits upon the respondents no later than December 15, 2006. Dkt. #1, p.2. Beginning in early November 2006 and continuing through December 2006, plaintiff endeavored to have an encumbrance granted for copies of the Order to Show Cause, the Petition, exhibits and supporting affidavits. Indeed, plaintiff complied with defendant Bartlett's request and submitted the documents for her review on or about December 8, 2006. Dkt. #42, ¶ 15; Dkt. #42, pp.20-34. By memorandum dated December 14, 2006, defendant Bartlett advised plaintiff as follows: "You will be advanced funds for the signed Order to Show Cause and <u>necessary</u> exhibits. You must hand copy any petitions and supporting affidavits. All your documents are being returned to you. You should complete an Advance of Funds form, being specific as to your needed copies and forward it back to me." Dkt. #42, p.36 (emphasis in original).

On December 21, 2006, defendant Bartlett received a letter from plaintiff including the exhibits he believed were necessary. Dkt. #42, ¶ 18; Dkt. #42, pp.37-38. Again, on the same day, defendant Bartlett responded to plaintiff by memorandum and advised him that because the other documents could be reproduced longhand, he would only be approved for an advance to copy the Order to Show Cause. Dkt. #42, ¶ 19; Dkt. #42, pp.39-40. On December 24, 2006, plaintiff again wrote to defendant Bartlett acknowledging that only the Order to Show Cause would be copied and plaintiff requested 12 copies of the Order to Show Cause. Dkt. #42,¶ 20; Dkt. #42, pp.41-42. By memorandum dated December 27, 2006, defendant Bartlett informed plaintiff that

because only the six respondents and the Attorney General's Office needed copies of the Order to Show Cause, defendant Bartlett would only authorize 7 copies to be made unless plaintiff could explain why additional copies were necessary. Dkt. #42, ¶ 21; Dkt. #42, pp.42-43. In an undated letter to defendant Bartlett, plaintiff agreed with her determination and acknowledged that he needed only 7 copies. Dkt. #42, ¶ 22; Dkt. #42, pp.45-46. Thereafter, the 7 copies of the Order to Show Cause were made. *Id*. Thus, plaintiff was ultimately provided with 7 copies of the Order to Show Cause and consistent with Directive No. 4483, was required to replicate the petition and affidavit (documents he originally drafted) longhand.

As discussed above, plaintiff can point to not one single piece of evidence to support his allegation that defendants deliberately and maliciously denied him access to the courts. To the contrary, all of the evidence in the record before this Court conclusively establishes that defendants were responsive to plaintiff's requests, offered suggestions to plaintiff as to how he could get the copies he needed made and ultimately, approved plaintiff's request to have the Order to Show Cause copied for each of the respondents and the Attorney General's Office. Thus, not only was plaintiff granted the encumbrance he requested for those documents that could not be replicated longhand, consistent with DOCS Directive 4483, but plaintiff agreed and acknowledged that he only needed 7 copies of the Order to Show Cause. Moreover, at no time prior to December 15, 2006, did plaintiff make any effort whatsoever to seek an extension of time from Justice Teresi to serve the Order to Show Cause, Petition, exhibits and supporting affidavits on the grounds that he was endeavoring to secure an

encumbrance for the photocopying costs.  In addition, plaintiff (petitioner) failed to respond to respondents' motion to dismiss the Article 78 proceeding resulting in its dismissal.  Thus, although this Court declines to decide whether an Article 78 proceeding can ground an access to the courts claim, the record before this Court is clear, plaintiff cannot demonstrate that the defendants acted deliberately and maliciously.  Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment (Dkt. #31) is denied and defendants' motion for summary judgment (Dkt. #40) is granted.

**Retaliation**

Plaintiff is currently being housed at Southport.  On or about February 8, 2010, plaintiff filed a motion for a temporary restraining order (Dkt. #56) directing that plaintiff "become legally barred from Southport Correctional Facility [and Attica Correctional Facility]."[1]  In support of plaintiff's motion, plaintiff states that "[a] spider web of unconstitutional physical disposition [sic] is taking place against said plaintiff by prison officials at such institute countless structures of "retaliation" have been established."  Dkt. #56, p.2.  Thus, plaintiff asks this Court to enter an order "barr[ing] [plaintiff] from entering Southport Corr. Facility and Attica Correctional Facility, until disposition has been adequately imposed by [this Court]."  Dkt. #56, p.4.  This Court lacks the authority to order that the defendant be imprisoned in any particular facility.

---

[1] In addition, plaintiff also seeks to be barred from Attica Correctional Facility ("Attica") by reason of two other actions pending against DOCS employees at Attica, 08-CV-473 and 08-CV-658.

*See United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995); *Fisher v. Goord*, 981 F.Supp. 140, 176 (W.D.N.Y. 1997); *United States v. Hollenbeck*, 932 F.Supp 53, 58 (N.D.N.Y. 1996). Accordingly, plaintiff's request to be "barred" from Southport and Attica for protection from retaliation is denied.

## **CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Summary Judgment (Dkt. #31) and plaintiff's motion for a temporary restraining order directing that plaintiff "become legally barred from Southport Correctional Facility" (Dkt. #56) are denied. In addition, for the foregoing reasons, defendants' Motion for Summary Judgment (Dkt. #40) is granted.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on

motion, to the United States Court of Appeals for the Second Circuit, in accordance with

Rule 24 of the Federal Rules of Appellate Procedure.


	**SO ORDERED.**

DATED:	Buffalo, New York
	March 23, 2010



	<u>s/ H. Kenneth Schroeder, Jr.</u>
	**H. KENNETH SCHROEDER, JR.**
	**United States Magistrate Judge**